IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RODNEY J. MURPHY, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-980-RAH-SMD |
| | ) | |
| Q.R.C., d/b/a APPLEBEES, *et al.*, | ) | |
| | ) | |
|    Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is pro se Plaintiff Rodney J. Murphy's ("Murphy") Second Amended Complaint, which is pending the Court's review under 28 U.S.C. § 1915(e). Second Amended Compl. (Doc. 9). Murphy alleges that he was subjected to a hostile work environment and retaliation while employed at Applebee's. *See generally id.* For the reasons set forth below, the undersigned recommends that Murphy's Second Amended Complaint be dismissed prior to service of process.

### I.    BACKGROUND

On November 30, 2020, Murphy filed a Complaint that purported to bring, *inter alia*, federal claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Compl. (Doc. 1) p. 2. Although his Complaint was not a model of clarity, Murphy appeared to allege that he experienced various acts of race discrimination while he was employed at Applebee's. *Id.* at 2-4.

In conducting § 1915 review of the Complaint, the undersigned found, in part, that Murphy failed to allege sufficient facts to support his Title VII claims, as construed, for

hostile work environment and retaliation. Order (Doc. 6) pp. 6-15. Specifically, the undersigned advised Murphy that he failed to link his claims to the defendants and their alleged conduct, id. at 5-6; that the conduct that Murphy complained about was not sufficiently severe or pervasive to be actionable under Title VII, *id.* at 6-10; and that Murphy's Title VII claims were potentially time-barred because Murphy filed his Complaint more than ninety days after he presumably received his EEOC right-to-sue letter, *id.* at 10-12. Because of these deficiencies, the undersigned ordered Murphy to amend his Complaint and provided Murphy with detailed instructions on how to amend his Complaint to satisfy the federal pleading standards. *Id.* at 14-15. Specifically, the undersigned advised Murphy that he must file "an amended complaint that complies with Rules 8, 10, and 11 of the Federal Rules of Civil Procedure" and the following requirements:

(1) The amended complaint shall set forth the specific federal cause(s) of action under which Murphy brings his claims or allege sufficient facts to support diversity jurisdiction.
(2) For each cause of action alleged, the amended complaint must contain factual allegations about each defendant's conduct, clearly indicating which specific factual allegations provide support for which cause(s) of action and noting the relevant date of all such actions. The amended complaint should not incorporate by reference previous paragraphs within the complaint.
(3) The amended complaint must include clear allegations of fact showing that Murphy is entitled to relief. The facts must be stated in a clear, concise, and direct manner. They may not include legal argument, legal standards, or legal conclusions.
(4) The amended complaint must be set out in numbered paragraphs, each limited, as far as practicable, to a specific set of circumstances.
(5) Murphy shall attach all appropriate documentation showing that his relevant claims have been administratively exhausted.

*Id.* at 15. The undersigned warned Murphy "**that his failure to comply with this order will result in a recommendation that this case be dismissed for failure to prosecute this action and/or for failure to abide by orders of the Court.**" *Id.* (emphasis in original). Finally, the undersigned advised Murphy that "**his amended complaint, should he file one, will take the place of his original complaint and that the Court will consider only his amended complaint and the documents attached thereto in determining whether it satisfies 28 U.S.C. § 1915(e)(2)(B) review.**" *Id.* (emphasis in original).

On August 9, 2021, Murphy filed an Amended Complaint. Amended Compl. (Doc. 7). Murphy's Amended Complaint was worse than his original Complaint in its compliance with the Federal Rules of Civil Procedure. Other than the attached EEOC Charge, the Amended Complaint provided no allegations to support any of Murphy's claims.[1] Therefore, the undersigned advised Murphy that it was "unclear . . . what facts support[ed] Murphy's federal claims." Order (Doc. 8) p. 3. The undersigned further advised Murphy that his Amended Complaint contained most, if not all, of the same deficiencies under the Federal Rules the undersigned previously instructed Murphy to address. For example, the undersigned advised Murphy that his Amended Complaint contained "no 'simple, concise, and direct' facts showing that he is entitled to relief." *Id.* at 4. Nor did the Amended Complaint "contain 'numbered paragraphs . . . limited, as far as practicable, to a specific

---

[1] Indeed, Section III E of the form complaint, which asked Murphy to provide "[t]he facts of [his] case," was blank. Amended Compl. (Doc. 7) p. 4.

3

set of circumstances.'" *Id.* at 4-5. And, finally, the undersigned advised Murphy that the Amended Complaint did not "'indicat[e] which specific factual allegations provide[d] support for which cause(s) of action.'" *Id.* at 5. Thus, the undersigned ordered Murphy to amend a second time. Murphy was directed to file his second amended complaint to comply with the Federal Rules and, once again, the following requirements:

> (1) The amended complaint shall set forth the specific federal cause(s) of action under which Murphy brings his claims or allege sufficient facts to support diversity jurisdiction.
> (2) For each cause of action alleged, the amended complaint must contain factual allegations about each defendant's conduct, clearly indicating which specific factual allegations provide support for which cause(s) of action and noting the relevant date of all such actions. The amended complaint should not incorporate by reference previous paragraphs within the complaint.
> (3) The amended complaint must include clear allegations of fact showing that Murphy is entitled to relief. The facts must be stated in a clear, concise, and direct manner. They may not include legal argument, legal standards, or legal conclusions.
> (4) The amended complaint must be set out in numbered paragraphs, each limited, as far as practicable, to a specific set of circumstances.
> (5) Murphy shall attach all appropriate documentation showing that his relevant claims have been administratively exhausted.

*Id.* Murphy was warned that his second amended complaint would take the place of his amended complaint and that only the second amended complaint, along with any attached documents, would be considered during the Court's § 1915 review. *Id.*

On March 21, 2022, Murphy filed his Second Amended Complaint (Doc. 9). Upon review, the undersigned finds that the Second Amended Complaint fails to state a claim and should be dismissed.

## II.  JURISDICTION

Federal courts are courts of limited jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). As such, they only have the power to hear cases that they have been authorized to hear by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have jurisdiction over two general types of cases: (1) cases that arise under federal law[2] and (2) cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties.[3] *Home Depot U.S.A., Inc. v. Jackson,* 139 S. Ct. 1743, 1746 (2019).  Courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen,* 511 U.S. at 377.

Here, Murphy asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., ("Title VII"), and other, unspecified federal law for "harassment," "threats of violence," and "equal pay retaliation." Second Amended Compl. (Doc. 9) p. 3. Based on his allegations, the undersigned is unaware of any federal law under which Murphy could bring claims for harassment or threats of violence other than Title VII. As for Murphy's indication that he seeks to bring an "equal pay retaliation" claim under federal law other than Title VII, the undersigned liberally construes this as an attempt to assert a retaliation claim under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1).

---

[2] 28 U.S.C. § 1331.

[3] 28 U.S.C. § 1332(a).

5

Plaintiff's Title VII and EPA retaliation claims present federal questions within this Court's original jurisdiction under 28 U.S.C. § 1331.

### III. FACTUAL ALLEGATIONS

Murphy alleges the following facts in his Second Amended Complaint. In November 2019, at Applebee's on Taylor Road, in Montgomery, Alabama, an employee named Felisha Gray "threaten[ed] plaintiff of violence with a gun." Second Amended Compl. (Doc. 9) p. 6. At the same location in December 2019, "Agent of the company Kevin Trotter called plaintiff the N-word, used as a racial slur, physically shoved and elbowed plaintiff which resulted in damaging [his] name tag." *Id.* After these events occurred, Trotter "threatened to call law enforcement." *Id.* Later that month, employee Avion Dixion "threatened plaintiff with a gun." *Id.* Finally, in January 2020, "Agent Brandon Godby su[s]pended plaintiff as a cover for termination . . . after plaintiff asked was this an equal opportunity." *Id.*

Murphy filed an EEOC Charge around January 2, 2020.[4] *Id.* at 5. He seeks injunctive relief, restoration of his employment, back pay, "up pay," promotion, past and future medical, compensatory and punitive damage, pain and suffering in the amount of $75,000.00, and mental anguish in the amount of $75,000.00. *Id.* at 7.

---

[4] Despite being advised to "attach all appropriate documentation showing that his relevant claims have been administratively exhausted," *see* Order (Doc. 8) p. 5, Murphy did not attach his EEOC Charge or his right-to-sue letter.

6

IV. **DISCUSSION**

Liberally construing Murphy's Second Amended Complaint, it appears that he is attempting to state a Title VII claim for hostile work environment, along with an EPA retaliation claim. Because Murphy has failed to state either claim, his Second Amended Complaint should be dismissed.

A. **Title VII Hostile Work Environment Claim**

A Title VII hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a hostile work environment claim, a plaintiff must show that: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *See, e.g.*, *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (applying the elements to a hostile work environment claim under § 1981); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (applying the elements to a hostile work environment claim under Title VII). The "severe or pervasive" requirement contains both an objective and a subjective component. *Miller*, 277 F.3d at 1276. In evaluating the objective severity of the harassment, a court considers: "(1) the frequency of the conduct; (2) the severity of the

7

conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

Murphy appears to base his hostile work environment claim on being called the "n-word" by Defendant's "Agent" Trotter. Second Amended Compl. (Doc. 9) p. 6. While such conduct is offensive, being called the "n-word" on one occasion is not severe or pervasive enough to constitute a hostile work environment.[5] In other words, although the use of this racial epithet is undoubtedly inappropriate and offensive, case law makes clear that occasional use of even the most incendiary epithets, without more, does not result in actionable conduct.

Murphy also alleges that Trotter "shoved and elbowed" him during their interaction, which caused damage to his nametag. Second Amended Compl. (Doc. 9) p. 6. It is unclear whether Murphy is alleging that he was shoved and elbowed because of his race or whether

---

[5] *See, e.g., Adams v. Austal U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (finding conduct was not sufficiently severe or pervasive where an African-American plaintiff "saw his coworkers wear the Confederate flag on a regular basis," "saw racist graffiti in the men's restroom that he used on a daily basis," "heard people say the slur 'n*****,' but only a 'few times,'" and heard about a noose being left in the breakroom, though he did not see it himself); *Harrington v. Disney Reg'l Entm't, Inc.*, 276 F. App'x 863, 875-77 (11th Cir. 2007) (although offensive, reference to the plaintiff as "lazy n*****" and occasional use of term "ghetto" did not amount to actionable conduct for racial harassment claim); *Barrow v. Ga. Pac. Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (display of the rebel flag on tool boxes and hard hats, letters KKK appearing on bathroom wall and block-saw console, use of the "n word" three times or more a year, noose in employee's locker, and other isolated racial slurs, while offensive, were not so severe or pervasive as to alter conditions of employment); *Fortson v. Columbia Farms Feed Mill*, 34 F. Supp. 3d 1302, 1305-08 (M.D. Ga. 2014) (twelve racially derogatory comments in a seven month span, over two years of employment, is insufficient to support a hostile work environment claim); *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1341 (S.D. Fla. 2014) (holding that three incidents of racial slurs were insufficient to state a claim for a racially hostile work environment); *Joseph v. Fla. Quality Truss Indus., Inc.*, 2006 WL 3519095, at *10 (S.D. Fla. Dec. 6, 2006) (explaining that "the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.").

that conduct was a byproduct of his general interaction with Trotter. But to the extent racial motivation can be inferred to Trotter's physical conduct based on his use of a racially derogatory term during the same interaction, the harassment still fails to meet the objectively severe standard required to establish a hostile work environment.

In reaching this conclusion, the undersigned examines the totality of the circumstances and finds that the *Miller* factors advise against concluding that the alleged harassment was severe. First, the alleged harassment occurred once and caused harm only to Murphy's nametag. Thus, the first two *Miller* factors—i.e., whether the harassment was frequent and whether the harassment was severe—weigh against finding it objectively severe. Second, Murphy does not allege that Trotter's harassment interfered with his ability to perform his job; thus, the fourth *Miller* factor—whether the harassment unreasonably interferes with the employee's job performance—weighs against finding it objectively severe. Finally, although Murphy alleges that Trotter pushed and elbowed him during their interaction, a push and an elbow that caused damage only to Murphy's nametag is not objectively physically threatening. *See Ambus v. AutoZoners, LLC*, 71 F. Supp. 1280, 1300-01 (M.D. Ala. 2014) (finding that the conduct of which the plaintiff complained, which included an allegation that he was shoved because of his race, did not meet the severe or pervasive standard); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (isolated incidents, unless extremely serious, do not amount to discriminatory changes in an

employee's terms and conditions of employment). Therefore, the third *Miller* factor weighs against finding the harassment objectively severe.[6]

Of course, a hostile work environment claim cannot be determined by examining "each alleged incident of harassment in a vacuum." *Vance v. S. Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1510-11 (11th Cir. 1989). But for conduct to be considered part of a hostile work environment claim, the plaintiff must establish that "the alleged harassment . . . was based on a protected characteristic[.]" *Enwonwu v. The Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 602 (11th Cir. 2008). Although Murphy alleges that he experienced other harassment at Applebee's that could clearly be considered hostile, he has not suggested that those instances of harassment were based on a protected characteristic. Indeed, while Murphy alleges that he was threatened with a gun by two different employees, he does not contend that he was threatened because of his race, national origin, gender, or other protected characteristic. Murphy provides no context for why he was threatened by these individuals, and the undersigned declines to speculate that the threats were made because of a protected characteristic. As such, the undersigned does not consider these allegations as part of Murphy's hostile work environment claim. *See, e.g.*, *Howard v. United Pruitt Corp.*, 196 F. App'x 780, 781 (11th Cir. 2006) (finding the plaintiff's hostile work environment claim inadequate when she "failed to offer any evidence that any of the[ ] incidents were related to her race"); *Austin v. City of Montgomery*, 196 F. App'x 747, 751-752 (11th Cir. 2006) (granting summary judgment on the plaintiff's racially hostile work

---

[6] Even if the third factor were to weigh in favor of finding the harassment objectively severe, the remaining three factors tip the scale towards concluding that the conduct was not severe.

environment claim when the plaintiff failed to present evidence that any unwelcome harassment was based on race).

In sum, then, Murphy alleges one occasion where an Applebee's employee called him the "n-word" and shoved and elbowed him. He does not identify the race of this employee. Under the totality of the circumstances, this alleged harassment does not meet the severe or pervasive standard to state a claim for a Title VII hostile work environment. As such, the claim should be dismissed.

### B. EPA Retaliation Claim

The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. 29 U.S.C. § 206(d)(1). The anti-retaliation provision of the EPA makes it unlawful for an employer to discharge or otherwise retaliate against an employee for filing a complaint or instituting proceedings related to the Fair Labor Standards Act. 29 U.S.C.§ 215(a)(3); *see Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018). To state an EPA retaliation claim, a plaintiff must allege facts sufficient to show that: (1) he engaged in statutorily protected activity under the EPA; (2) he subsequently suffered an adverse action by the employer; and (3) there was a causal connection between his activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

Here, Murphy alleges that he was suspended after he "asked was this an equal opportunity." Second Amended Compl. (Doc. 9) p. 6. Importantly, Murphy does not allege that he complained to his employer that he was receiving less pay because of his sex, which would implicate the EPA. Instead, he vaguely asserts that he asked someone who also

11

worked at Applebee's if something "was an equal opportunity." Second Amended Compl. (Doc. 9) p. 6. This allegation is insufficient to show that Murphy engaged in statutorily protected activity under the EPA. *But see Prosser v. Thiele Kaolin Co*., 135 F. Supp. 3d 1342, 1357 (M.D. Ga. 2015) (finding that the plaintiff engaged in protected activity when she complained that her "pay is lower than the guys' is").

Because Murphy's Second Amended Complaint leaves only speculation that he opposed wage discrimination based on his sex, Murphy has failed to state a retaliation claim under the EPA.[7] *See Arafat v. Sch. Bd. of Broward Cnty*., 549 F. App'x 872, 976

---

[7] Notably, the undersigned has construed Murphy's Second Amended Complaint to state an EPA retaliation claim and not a Title VII retaliation claim. This is because Murphy specifically complains of "equal pay retaliation" brought pursuant to "[o]ther federal law" besides Title VII. Second Amended Compl. (Doc. 9) p. 3. But to the extent Murphy is attempting to allege a Title VII retaliation claim or that his Second Amended Complaint may be construed in that manner, Murphy has failed to state such a claim.

A plaintiff demonstrates a prima facie case of retaliation under Title VII by showing that (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Crawford v. Carroll*, 529 F.3d at 970. Informal complaints to an employee's superiors and the use of an employer's internal grievance procedures can qualify as protected conduct. *See Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). However, "a complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." EEOC Compl. Man. (CCH) §§ 8–II–B(2) (2006); *see Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (using the EEOC manual in interpreting the opposition clause of the antiretaliation statute); *see also Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010). The employee must, "at the very least, communicate [his] belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred.t" Demers v. Adams Homes, Inc., 321 F. App'x 847, 852 (11th Cir. 2009) (internal quotes omitted); *see Jeronimus v. Polk Cnty. Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005) (a complaint "of being 'singled out,' being subjected to 'a campaign of harassment,' and working in a 'hostile environment' . . . did not amount to protected conduct" where it "never suggested that this treatment was in any way related to [the plaintiff's] race or sex").

Here, Murphy asking whether something was "an equal opportunity" does not constitute protected conduct under Title VII. Taken as true, the allegation does not communicate to Murphy's employer that he believes the employer is engaging in a practice that constitutes unlawful employment discrimination based on a protected characteristic. As such, Murphy has not stated a claim for Title VII retaliation.

12

(11th Cir. 2013) (finding that the plaintiff's "conclusory and 'formulaic recitation of the elements' of an EPA claim is insufficient to state a claim").

## V. CONCLUSION

For the reasons explained above, it is the

RECOMMENDATION of the undersigned United States Magistrate Judge that Murphy's Second Amended Complaint (Doc. 9) be DISMISSED pursuant to the Court's § 1915(e) review. It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before May 24, 2022**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 10th day of May, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE